## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re,<br><br>Foxwood Hills Property Owners Association, Inc.,<br><br><div align="right">Debtor(s).</div> | C/A No. 20-02092-HB<br><br>Adv. Pro. No. 20-80049-HB |
| Foxwood Hills Property Owners Association, Inc.,<br><br><div align="right">Plaintiff(s),</div><br>v.<br><br>783-C, LLC *et al.*<br><div align="right">Defendant(s).</div> | Chapter 11<br><br>**ORDER** |

**THIS MATTER** is before the Court on the *Motion for Determination of Core/Non-Core Status and Motion for Abstention Pursuant to 28 U.S.C. §§ 1334(c)(1) and 1334(c)(2) and 11 U.S.C. § 305(a)(1)* filed by Defendant Tona Renee Busbee ("Busbee"),[1] requesting the Court abstain from presiding over the above-captioned bankruptcy case and adversary proceeding, and the *Withdrawal of Consent to Bankruptcy Jurisdiction* filed by Defendants Busbee and Jackie Calvin Busbee, Jr. ("Mr. Busbee") in the adversary proceeding.[2]  Foxwood Hills Property Owners Association, Inc. (the "Association") filed Responses objecting to the relief requested in the Motion[3] and Withdrawals.[4]  Various documents seeking to join the Motion were filed by other *pro se* defendants[5] as well as the numerous defendants represented by attorney Michael B. Dodd

---

[1] ECF No. 184, C/A No. 20-02092-hb; ECF No. 297, Adv. Pro. No. 20-80049-hb.

[2] ECF Nos 303 & 304.

[3] ECF Nos. 205 & 207, C/A No. 20-02092-hb; ECF Nos. 322 & 324, Adv. Pro. No. 20-80049-hb.  Busbee filed in the adversary proceeding a Reply to the Association's Response. (ECF No. 329, filed Mar. 22, 2021.)

[4] ECF Nos. 333 & 334, filed Mar. 25, 2021.  Thereafter the Busbees filed Motions in support of their request to withdraw consent (ECF Nos. 341 & 342, filed Mar. 31, 2021).

[5] *See* ECF Nos. 195 (Mr. Busbee), 200 (Jody and Whitney Pope), 199 (Charles V. Burrell), 201 & 215 (Christopher Allen Pierce), 203 (Sheri Kimball, Trustee for Trust B Under the Will of James Perry Kimball) filed in C/A No. 20-

(defined therein as the "Dodd Defendants").[6]  The Court entered an order on March 24, 2021, scheduling a hearing and requiring any party intending to participate to complete a pretrial statement indicating witnesses to be called and proposed exhibits.[7]  Only Busbee and counsels for the Association and the Dodd Defendants submitted Pretrial Statements and participated in the hearing held on April 27, 2021.

### FACTS AND PROCEDURAL HISTORY

The Association is the property owners' association for a residential development known as Foxwood Hills (the "Community") located on Lake Hartwell in Oconee County, South Carolina. The Association is a nonprofit corporation and its duties include the maintenance, operation, and management of: roadways within the Community; security services; certain vacant lots; and amenities, including a clubhouse, restaurant, pool, tennis courts, parking area, docks, and common areas.  The Association is governed by a board of directors consisting of seven members who each serve three-year terms.  Board members are elected pursuant to the Association's bylaws through annual elections.  All board members are unpaid volunteers.

The Community is comprised of approximately 4,100 lots divided among more than 20 different sections that range from lakefront and single-family homes to recreational vehicle and mobile home lots.  In developing the different sections of the Community, the developer filed different covenants and restrictions as part of the real property records and conveyed deeds with different amounts in assessments payable to the Association.  As a result, the Association has been inconsistent in enforcing restrictions and assessing dues for many years.

---

02092-hb. *See* ECF Nos. 309 (Mr. Busbee), 311 (Pope), 315 (Burrell), 317 & 331 (Pierce), 320 (Kimball Trust), 330 (Jim Ed Pitt & Tammy Theresa Pitt), filed in Adv. Pro. No. 20-80049-hb.
[6] ECF No. 204, C/A No. 20-02092-hb; ECF No. 321, Adv. Pro. No. 20-80049-hb.
[7] ECF No. 332.

## I.    STATE COURT LITIGATION

Busbee owns three lots in the Hatteras I section of the Community.  In October 2017, she filed an action against the Association in the Oconee County Court of Common Pleas, C/A No. 2017-CP-37-00607 ("Hatteras Action"), asserting the Association failed to enforce various restrictions on the lots within the Community, including the Hatteras I section.  Busbee sought a declaratory judgment that, *inter alia*, she is not a member of the Association and is only required to pay a minimal annual assessment amount for the maintenance of roads and use of recreational facilities.  Busbee did not assert a right to a jury trial.

In July 2018, the Association filed a motion to join in the Hatteras Action all record property owners in the Hatteras I section to prevent further litigation and obtain a consistent ruling among the lots and property owners within this section of the Community.  Despite Busbee's objection filed in August 2018, the state court granted the Association's request on January 25, 2019.  Thereafter, the Association filed a third-party complaint naming as third-party defendants approximately 200 property owners within the Hatteras I section.  The Association sought a declaratory judgment that the third-party defendants are members of the Association and subject to its bylaws and, therefore, required to pay budget-based dues, fees, and assessments.  The third-party complaint also requested the state court revise the Hatteras I restrictions to provide the same. Busbee filed a motion to dismiss the Association's third-party complaint, which the state court denied on June 14, 2019.

The pleadings stage of the Hatteras Action continued throughout 2019 and into 2020, as both Busbee and the Association filed various amendments.  In the meantime, the Association attempted service of the summons and third-party complaint on the third-party defendants through various methods, including a process server and sheriff's offices for numerous jurisdictions in

3

which the Hatteras I property owners resided.  Complications with service arose, including failing to locate all third-party defendants.  Service was never completed and the Hatteras Action never progressed past this initial stage.  At that time, the Association incurred approximately $261,000.00 in legal fees and expenses.

In April 2018, Christopher Pierce filed an action against the Association in Oconee County, seeking a judgment of $1,226.00 for alleged overpaid dues wrongfully charged to him.  The Association incurred approximately $44,000.00 in legal fees and expenses in that action.

## II.    CHAPTER 11 BANKRUPTCY CASE

The Hatteras Action and other state court litigation exposed issues with the covenants and restrictions on lots within the Community and the governance of the Association, which directly and indirectly affected the Association's successful operation.  Prior to the Hatteras Action, the Association's collection rate of fees, dues, and assessments for its 2017-2018 fiscal year was approximately 70% of all property owners within the Community.  Although originally anticipated to improve the following year, the collection rate fell to 57% and further decreased to 50% for 2019-2020.  The Association concluded this drastic decrease was caused by the Hatteras Action as word spread of controversy over the property owners' obligation to pay fees, dues, and assessments.  Additionally, the Association previously initiated foreclosure actions when property owners failed to pay fees, dues, and assessments.  The board adopted a less aggressive collection approach after the Hatteras Action to avoid possible counterclaims similar to Busbee's claims, resulting in less recovery of amounts owed.  These issues will remain until the matters concerning membership in the Association and calculation of fees, dues, and assessments are resolved.

Realizing this, as well as the threat of additional litigation since the Hatteras Action involved only one section of the Community, the resulting insurmountable legal expense (in

addition to the amounts already spent), and that the Association would no longer be able to operate

if these issues remained, the Association board began to explore alternative methods for resolution.

In Fall 2019, the board began to seriously consider Chapter 11 bankruptcy relief and spoke with

bankruptcy counsel.  Its bankruptcy counsel conducted two town hall meetings in February 2020,

where property owners attended and voiced both opposition and support for filing bankruptcy.

The Association ultimately determined that filing for Chapter 11 bankruptcy relief was an

efficient means to comprehensively address the issues regarding restrictions in certain deeds and

recorded real property filings by initiating a single adversary proceeding against all property

owners within the Community, rather than piecemeal, duplicative litigation with the numerous

sections of the Community that would likely last several years.  Although solvent, if these issues

are left unaddressed, they jeopardize the Association's ability to continue operating and fulfill its

obligations.  The board, therefore, filed a petition for Chapter 11 relief on behalf of the Association

on May 8, 2020, staying the Hatteras Action and other state court litigation.

The Association also seeks to accomplish through its Chapter 11 case the following:

treatment for the "outparcel lots" of the Community, which have no infrastructure and pose a

liability to the Community; termination of the executory contract with its prior management

company and resolution of disputes with that party over amounts allegedly owed; resolution of

disputes concerning enhancement fees for water supply and sewage collection on lots owned by

the Association; and clarification as to which restrictions and covenants will be enforced by the

Association.  These issues were addressed in the Association's plan and disclosure statement, filed

March 4, 2021.[8]  The plan also provided for payment in full of the Association's creditors and

proposed amendments to the bylaws.  However, after numerous objections and a lengthy hearing,

---

[8] ECF Nos. 188 & 189, C/A No. 20-02092-hb.

the Association agreed to remove from the plan sections concerning the bylaws and filed an amended plan and disclosure statement.[9]  A hearing to consider the amended disclosure statement is scheduled for May 26, 2021.  The Association has also provided significant information through its monthly operating reports and other filings with the Court.

## III.    ADVERSARY PROCEEDING

The above-captioned adversary proceeding was filed on July 13, 2020, naming over 3,300 defendants who are property owners of record within the Community.  This proceeding seeks to determine issues regarding membership, member voting rights, and restrictions on assessments.[10] Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, the Association's Amended Complaint seeks a declaratory judgment based on equitable grounds for relief that defendants are members of the Association with equal voting rights and are required to pay budget-based dues, fees, and assessments.[11]  The Amended Complaint also asserts various covenants and restrictions on certain deeds and recorded real property filings did not address membership in the Association and failed to contemplate an adequate source of funding for the privately maintained roads and amenities of the Community.  The Association alleges the requested equitable relief is needed because enforcing these various restrictions, some of which have not been followed or enforced for decades, would result in its demise.  Therefore, the Association requests the covenants and restrictions be rescinded/cancelled or reformed to provide that all property owners within the Community are members of the Association, subject to its bylaws, and must pay budget-based dues, fees, and assessments.

---

[9] ECF Nos. 275 & 276.

[10] Prior to service of the Complaint, the Association filed an Amended Complaint on July 23, 2020 to add fifty-five additional defendants who recently became lot owners in the Community.

[11] The Association asserts the following equitable grounds for obtaining the requested declaratory relief: *quantum meruit*/implied contract, course of dealings/course of performance, laches, promissory estoppel, equitable estoppel, waiver, statute of limitations, equitable contribution, perpetual contracts are unreasonable and disfavored, and changed circumstances.

A Summons was issued on August 4, 2020. A noticing, claims, and service agent employed by the Association served the Summons and Amended Complaint on the defendants by first class U.S. Mail. Thereafter, certain defendants were served by publication.[12] The Court has since entered default judgments against approximately 97% of the property owners and over 70% of the lots in the Community declaring that these defendants are members of the Association and will pay budget-based dues, fees, and assessments.[13] Of the 3,300 defendants named, only 117 filed answers and remain in this action ("Answering Defendants"). The Dodd Defendants comprise 89 of the Answering Defendants and 27 Answering Defendants are *pro se*.[14] Approximately 49 of the Answering Defendants were third-party defendants in the Hatteras Action.

Only the Dodd Defendants, Busbee, and Christopher Pierce asserted counterclaims against the Association. The Dodd Defendants' counterclaims seek declaratory relief. Pierce seeks a refund of amounts allegedly overpaid to the Association. Busbee's counterclaims include requests for declaratory relief and a monetary judgment for fraud–intentional misrepresentation, fraud–concealment, and negligent misrepresentation and negligence per se.[15] She seeks damages for alleged wrongfully charged dues, fees, and assessments in violation of the recorded restrictions.

While the deadline to answer has passed, discovery in the adversary proceeding has not yet begun due to the volume of defendants and various motions filed. On February 22, 2021, the Court entered a *Case Management Order* requiring counsel for the Association to consult with the

---

[12] *See* ECF No. 72, entered Oct. 26, 2020.

[13] *See* ECF Nos. 139 & 140 (entered Dec. 3, 2020); ECF Nos. 279 & 280 (entered Feb. 18, 2021).

[14] The remaining Answering Defendant is the Oconee County Forfeited Land Commission, who did not file any pleadings regarding this dispute. The Association filed an Application for Settlement resolving its disputes with this defendant. *See* ECF No. 359, filed Apr. 15, 2021.

[15] ECF No. 45, filed Oct. 7, 2020.

Answering Defendants to discuss, *inter alia*, the time needed for discovery.[16]  Counsel for the

Association complied[17] and indicated the parties request 120 days for discovery.

## IV.   ABSTENTION/CORE MOTION

On March 2, 2021, Busbee filed this Motion in the Chapter 11 case and the adversary

proceeding, requesting the Court determine whether the claims asserted in this adversary

proceeding are core proceedings and that the Court abstain from both the Chapter 11 case and

adversary proceeding.  She asserts this Court must and should abstain from adjudicating these

matters because they are non-core proceedings based on state law that can be properly and timely

adjudicated in state court.  She argues the Association only sought Chapter 11 relief to circumvent

the Hatteras Action and take advantage of service by first class mail as allowed under the Federal

Rules of Bankruptcy Procedure.  The Association objects, asserting various arguments as to why

the Court should not exercise mandatory or permissive abstention.

## V.   CONSENT WITHDRAWAL

In their initial Answers filed on September 3, 2020, Busbee and Mr. Busbee did not consent

to this Court entering final orders or judgment in this adversary proceeding.[18]  Busbee demanded

a jury trial and did not consent to this Court conducting that jury trial.  Busbee is the only defendant

to assert a right to a jury trial, which is for her counterclaims seeking damages.

In Amended Answers filed one month later, the Busbees consented to this Court entering

final orders or judgment in this case, and Busbee consented to this Court conducting a jury trial.[19]

However, in March 2021, Busbee and Mr. Busbee filed pleadings to withdraw their consent to

entry of final orders or judgment by this Court pursuant to Fed. R. Bankr. P. 7008.  Busbee seeks

---

[16] ECF No. 287.
[17] *See* ECF Nos. 301, 310, & 325.
[18] ECF Nos. 15 & 16.
[19] ECF Nos. 44 & 45, filed Oct. 7, 2020.

to also withdraw her consent to a jury trial being conducted by this Court pursuant to SC LBR

9015-1.  The Association objected, arguing Busbee is not entitled to a jury trial on her requests for

declaratory relief or related affirmative defenses.  If she is entitled to a jury trial for her other

counterclaims, the Association states it will propose to sever those from this adversary proceeding

before trial.

## DISCUSSION AND CONCLUSIONS

### I.    CORE/NON-CORE PROCEEDING

Bankruptcy courts are courts of limited jurisdiction that is derivative of and dependent

upon the three categories of proceedings set forth in 28 U.S.C. § 1334.  Under 28 U.S.C. § 1334(a),

the district courts "have original and exclusive jurisdiction of all cases under title 11."  They also

have "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising

in or related to cases under title 11." 28 U.S.C. § 1334(b).

> A proceeding or claim "arising in" Title 11 is one that is not based on any right
> expressly created by Title 11, but nevertheless, would have no existence outside of
> the bankruptcy.  Therefore, a controversy arises in Title 11 when it would have no
> practical existence *but for* the bankruptcy.

*Valley Historic Ltd. P'ship v. Bank of New York*, 486 F.3d 831, 835 (4th Cir. 2007) (emphasis in

original) (internal quotation marks and citations omitted).  A civil proceeding is "related to" a title

11 case if its outcome might have any conceivable effect on the bankruptcy estate. *Id.* at 836

(recognizing the Fourth Circuit's adoption of the test articulated by the Third Circuit in *Pacor, Inc.*

*v. Higgins,* 743 F.2d 984, 994 (3d Cir. 1984)).  "Therefore, 'an action is related to bankruptcy if

the outcome could alter the debtor's rights, liabilities, options or freedom of action (either

positively or negatively) and it in any way impacts upon the handling and administration of the

bankruptcy estate.'" *Id.* (quoting *Owens-Ill., Inc. v. Rapid Am. Corp. (In re Celotex Corp.)*, 124

F.3d 619, 625 (4th Cir. 1997)).

"Section 157 allocates the authority to enter final judgment between the bankruptcy court and the district court." *Stern v. Marshall*, 564 U.S. 462, 480, 131 S. Ct. 2594, 180 L. Ed. 2d 475 (2011) (citing 28 U.S.C. § 157(b) & (c)).   Upon referral from the district court, "[b]ankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11 . . . and may enter appropriate orders and judgments." 28 U.S.C. § 157(b)(1).   A non-exhaustive list of matters that are core proceedings is provided by 28 U.S.C. § 157, which includes those concerning the administration of the estate. 28 U.S.C. § 157(b)(2)(A).   For non-core proceedings that otherwise relate to the bankruptcy case under title 11, "the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge . . ." 28 U.S.C. § 157(c)(1).   "A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law." 28 U.S.C. § 157(b)(3).

Busbee asserts the adversary proceeding is non-core for which this Court has "related to" jurisdiction because the claims are based on state law and can be adjudicated by a state court.   The Association argues this adversary proceeding will determine the nature and extent of the Association's primary asset (income from assessments and dues) and the membership rights of the owners in the Community.   Therefore, it is a "core proceeding" because a determination of what comprises the Association's estate is central to the administration of its Chapter 11 case.

In support of its argument, the Association relies on *In re Mercer's Enter., Inc.*, 387 B.R. 681 (Bankr. E.D.N.C. 2008), where the claims involved a determination of the extent of the debtor's ownership in the estate's only property. *Id.* at 685-86.   The *Mercer's* court found the adversary proceeding to determine the scope of permanent easement rights in real property was a core proceeding because it was property of the estate and:

the debtor has asked for a declaratory judgment for the court to determine the proper title to the [property] and the appurtenant land, which is everything the debtor purports to own.  If it is found that the debtor does not own the [property] or the appurtenant land, then there is no bankruptcy case because there is no property to comprise an estate.  Thus, the central issue to be decided by the civil proceedings is what property makes up the estate.  This court is of the opinion that determining what, if anything, comprises the debtor's estate is central to the administration of the bankruptcy case.

*Id.* at 685-86 (citing 28 U.S.C. § 157(b)(2)(A)).  This Court has previously recognized "[t]he bankruptcy court has core and exclusive jurisdiction to determine what is property of the estate under § 541." *Anderson v. Campbell, et al. (In re Congaree Triton Acquisitions, LLC)*, Adv. Pro. No. 15-80147-JW, slip op. at 9 (Bankr. D.S.C. Mar. 16, 2016) (citing 28 U.S.C. § 1334(e); *All American Laundry v. Ascher (In re Ascher)*, 128 B.R. 639, 643 (Bankr. N.D. Ill. 1991) ("[A] determination of what is property of the estate and concurrently, of what is available for distribution to creditors of that estate, is precisely the type of proceeding over which the bankruptcy court has exclusive jurisdiction.")).

Pursuant to 28 U.S.C. § 1334(a), this Court has jurisdiction over the Chapter 11 case because it is a case under title 11.  Under 28 U.S.C. § 157(b)(1), this Court also has the authority to hear and determine this Chapter 11 case.  With regard to the adversary proceeding, the claims arise from state law and can be adjudicated in the state court.  However, that alone does not render them "non-core." *See* 28 U.S.C. § 157(b)(3).  The adversary proceeding concerns resolution of the Association's largest asset and source of operating income – the right to collect and assess to continue its operation and service to the Community – which is property of its bankruptcy estate and subject to the Court's jurisdiction under 28 U.S.C. § 1334(e). *See* 11 U.S.C. § 541(a)(6) (property of the estate includes "[p]roceeds, product, offspring, rents, or profits of or from property of the estate . . ."); 11 U.S.C. § 541(a)(7) (property of the estate includes "[a]ny interest in property that the estate acquires after the commencement of the case."); *see also TMT Procurement Corp.*

*v. Vantage Drilling Co. (In re TMT Procurement Corp.)*, 764 F.3d 512, 524-25 (5th Cir. 2014) ("Congress enacted § 541(a)(7) to clarify its intention that § 541 be an all-embracing definition and to ensure that property interests created with or by property of the estate are themselves property of the estate." (internal quotation marks omitted)).  The outcome of the adversary proceeding will affect the Association's ability to continue operating – a goal sought through the reorganization.

Standing alone, the claims asserted in the adversary proceeding do not arise under the Bankruptcy Code or arise in the Association's bankruptcy case.  However, because the Association sought Chapter 11 relief and these claims concern rights and interests over its largest asset, they are now entwined with the administration of the bankruptcy estate.  Consequently, adjudication of these causes of action that arise under nonbankruptcy law have become part and parcel with the administration of this bankruptcy estate. *See Campbell*, Adv. Pro. No. 15-80147-JW, slip op. at 10 ("While determination of the parties' property rights is based on state law, the Court is routinely asked to determine parties' rights under state law." (footnote and citations omitted)).  As a result, this adversary proceeding to determine what rights and the extent of those rights that comprise the Association's bankruptcy estate is a core proceeding. *See Mercer's*, 387 B.R. at 686.

Even if this adversary proceeding is non-core, that would not preclude the Court from presiding.  The district court's local rules refer to this Court "all cases under Title 11 and all proceedings arising under Title 11 or arising in or related to a case under Title 11." Local Civ. Rule 83.IX.01 (D.S.C.) (citing 28 U.S.C. § 157).  Under § 157(c)(1), non-core proceedings that otherwise relate to the bankruptcy case require the bankruptcy judge to "submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered

by the district judge . . ." Thus, the Court would be able to proceed through trial and submit to the district court proposed findings of fact and conclusions of law.

## II. ABSTENTION PURSUANT TO 28 U.S.C. § 1334

Busbee argues the Court should abstain from both the bankruptcy case and adversary proceeding regardless of whether they are core or non-core matters. There are two types of abstention under 28 U.S.C. § 1334(c): mandatory abstention pursuant to § 1334(c)(2); and permissive abstention pursuant to § 1334(c)(1). The Court finds no grounds for it to abstain from presiding over the Chapter 11 bankruptcy case. If Busbee believes the Chapter 11 case itself was improper, abstention is not the appropriate remedy. The Court will only address Busbee's request that the Court abstain from the adversary proceeding.

### A. MANDATORY ABSTENTION

Section 1334(c)(2) provides:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2). "If the following six factors are met, the court must abstain: (1) the motion to abstain was timely; (2) the action is based on a state law claim; (3) the action is a 'non-core', 'related to' proceeding; (4) Section 1334 provides the sole basis for federal jurisdiction; (5) the action is commenced in state court; and (6) the action can be timely adjudicated in state court." *BGC Partners Inc. v. Avison Young (Canada) Inc.*, C/A No. 2:15-CV-02057-DCN, 2015 WL 7458593, at *8 (D.S.C. Nov. 24, 2015) (emphasis in original) (quoting *In re Butterfield*, 339 B.R. 366, 372 (Bankr. E.D. Va. 2004)). The test for mandatory abstention is conjunctive; each of the factors must be satisfied before the Court must abstain. *Butterfield*, 339 B.R. at 373.

13

The Court is not required to abstain from a core proceeding under § 1334(c)(2).  Even if this matter is non-core, mandatory abstention is not warranted.  There is no parallel action commenced in state court, as the Hatteras Action is vastly different in scope and nature compared to this adversary proceeding.  It concerned only one of twenty sections that comprise the Community and named as third-party defendants only those who own property within that section. On the other hand, this adversary proceeding concerns all sections of the Community and names all property owners as defendants.  While both actions generally seek the same relief, the causes of action asserted therein also differ – the Hatteras Action only asserted a claim for a declaratory judgment, whereas here a declaratory judgment is requested based on numerous grounds for equitable relief.

 "[C]ourts within the Fourth Circuit have held that 'there is a presumption that the state courts operate timely and efficiently and the party seeking abstention is not required to affirmatively prove this facet of the abstention test in the absence of evidence from the opposing party.'" *BGC Partners*, 2015 WL 7458593, at *8-9 (quoting *Power Plant Ent. Casino Resort Ind., LLC v. Mangano*, 484 B.R. 290, 298-99 (Bankr. D. Md. 2012)).

> In determining whether the timely adjudication requirement is met, courts look at several factors, including: 1) any backlog in the state court system; 2) the status of bankruptcy proceedings; 3) the complexity of the issues brought in the action; and 4) whether the state court proceeding will lengthen "the administration or liquidation of the estate."  The correct inquiry is not where litigation would move the fastest, but whether it can be timely adjudicated in state court at all.  "[T]imeliness must be referenced against the needs of the title 11 case, rather than against an absolute time guideline."

*Mangano*, 484 B.R. at 297 (footnotes omitted).  "Even if a related proceeding could be adjudicated in state court in a short time, that adjudication may not be timely 'if that amount of delay would prejudice the bankruptcy case.'" *In re Province Grande Olde Liberty, LLC*, C/A No. 13-01563-8-

JRL, 2013 WL 2153214, at *3 (Bankr. E.D.N.C. May 17, 2013) (quoting *Suntrust Bank v. Ferrell (In re Pluma)*, 2000 WL 33673752, at *2 (Bankr. M.D.N.C. 2000)).

Despite the presumption that state courts operate timely and efficiently, the Association has presented evidence to demonstrate this matter cannot be efficiently adjudicated in state court, especially when compared to the resources available to this Court. The Hatteras Action progressed slowly and service was not complete, while this proceeding has moved quickly through this Court with the aid of the Bankruptcy Rules. Parties here were served in a timely and efficient manner. Despite numerous motions and pleadings from various parties, this Court has the benefit of resources to address all matters without delay (even considering restrictions necessary as a result of the COVID-19 pandemic) and the litigation is ready to proceed to discovery. This Court does not have a backlog of cases and can issue a scheduling order immediately. At the close of a brief yet sufficient discovery period, the Court is ready and able to timely adjudicate any dispositive motions and promptly schedule a trial, if necessary. The matters presented here are not overly complex and the Court is confident that, barring any unforeseen developments, this proceeding can move swiftly forward, whether that progress leads to a final order by this Court, proposed findings to the district court, or withdrawal of reference for any purpose. *See In re Morgantown Excavators, Inc.*, No. 12-1473, 2013 WL 4829165, at *3 (Bankr. N.D. W.Va. Sept. 9, 2013) ("Even though 28 U.S.C. § 157(c)(2) would require the court to submit proposed findings of fact and conclusions of law to the district court – absent the parties' consent for a final determination in this court – any delay caused by compliance with § 157(c)(2) is slight when compared to the delay that will result if adjudicated in State court."). Continued delay in the state court would lengthen and prejudice the Association's bankruptcy case because the ultimate goal for this reorganization

(to stabilize its membership and dues in order to continue operations) is reliant on the outcome of this adversary proceeding.

Overall, the requirements for the Court to exercise mandatory abstention pursuant to 28 U.S.C. § 1334(c)(2) are not present and the Motion must be denied.

### B. PERMISSIVE ABSTENTION

In some circumstances a court may voluntarily abstain pursuant to 28 U.S.C. § 1334(c)(1), which provides "nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 1334(c)(1). "Generally, courts agree that abstention should be exercised only in a narrow sphere of cases and that abstention should be the exception, not the rule." *Morgantown Excavators*, 2013 WL 4829165, at *3 (citations omitted).

"The Supreme Court has directed federal courts to narrowly construe requests for discretionary abstention, and to abstain in favor of a state court's adjudication of a matter only in 'exceptional circumstances,' when to abstain 'would clearly serve an important countervailing interest.'" *Chicora Life Ctr. LC v. Charleston Cnty. (In re Chicora Life Ctr, LC)*, Adv. Pro. No. 16-80046-JW, slip op. at 4 (Bankr. D.S.C. Feb. 9. 2017) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976)). "Most courts find that abstention should only occur when the outcome of the litigation would not significantly affect estate administration, state law issues predominate, and the matter is non-core." *Morgantown Excavators*, 2013 WL 4829165, at *3 (citing *DHP Holdings II Corp. v. Peter Skop Ind., Inc. (In re DHP Holdings II Corp.)*, 435 B.R. 220, 225 (Bankr. D. Del. 2010) (abstaining from hearing an adversary proceeding to recover pre- and post-bankruptcy receivables from an account debtor

16

where the amount involved was not large, thus not significantly affecting the estate administration)).

This Court has previously identified twelve factors to consider when determining whether to exercise permissive abstention: (1) the effect or lack thereof on the efficient administration of the estate if a court recommends abstention; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of the applicable state law; (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court; (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than form of an asserted "core" proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden of the bankruptcy court's docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; and (12) the presence in the proceeding of nondebtor parties. *Am. Investors Life Ins. Co. v. Salinas*, 353 B.R. 124, 128 (Bankr. D.S.C. 2006) (citing *Dunes Hotel Assocs. v. Hyatt Corp.*, 1996 WL 33340785, at *7 (Bankr. D.S.C. Jul. 11, 1996)).  "In determining the appropriateness of permissive abstention, courts have 'considered one or more (not necessarily all) of the twelve factors.'" *Morgantown Excavators*, 2013 WL 4829165, at *4 (quoting *Cody Inc. v. Cnty. of Orange (In re Cody, Inc.)*, 281 B.R. 182, 190 (S.D.N.Y. 2002), *aff'd in part, appeal dismissed in part,* 333 F.3d 89 (2d Cir. 2003)).  "A bankruptcy court has considerable discretion when deciding whether to abstain." *In re McCurnin*, 590 B.R. 729, 744 (Bankr. E.D. Va. 2018) (citing *Kepley Broscious, PLC v. Ahearn (In re Ahearn)*, 318 B.R. 638, 644 (Bankr. E.D. Va. 2003)); *see also BGC Partners*, 2015 WL 7458593, at *9 ("These factors are not binding but are

rather intended to be instructive in guiding the court's discretion." (citing *In re Bi-Lo, LLC*, C/A No. 08:10-cv-02159, 2010 WL 3938406, at *2-3 (D.S.C. Oct. 5, 2010)).  The moving party bears the burden of proving that discretionary abstention is warranted under the facts of the case. *Chicora Life Ctr.*, Adv. Pro. No. 16-80046-JW, slip op. at 5 (citing *Hough v. Margulies* (*In re Margulies*), 476 B.R. 393, 402 (Bankr. S.D.N.Y. 2012) ("The movant bears the burden of establishing that permissive abstention is warranted.")).

Applying these factors, abstention is not warranted in this adversary proceeding. Efficiently administering the Association's bankruptcy estate is best accomplished by the proceeding remaining in this forum where all the parties are before the court.  There was no parallel action pending in state court at the time the bankruptcy was filed because this adversary proceeding includes all owners of record of lots in the Community rather than only those in the Hatteras I section, asserts different grounds for relief, and not all Answering Defendants were parties to the Hatteras Action.  The Court cannot simply abstain and remand this matter to state court, maintaining progress made here.  Rather, abstention would result in lost effort and wasted resources.

Although state law issues predominate, they are not unique, unsettled, or difficult. *See Morgantown Excavators*, 2013 WL 4829165, at *4 (citing *Parrett v. Bank One (In re Nat'l Century Fin Enters.)*, 323 F.Supp.2d 861, 886 (S.D. Ohio 2004) (denying abstention in a case involving only state-law, non-core claims between non-debtor parties where movant failed to identify any "particularly difficult issues of state law")).  Additionally, the issues raised are intimately related to the Chapter 11 proceeding because they will determine the nature and extent of the Association's primary asset.  Although the Court has already issued judgments regarding 97% of the property owners and over 70% of the lots in the Community, this does not negate the fact that the issues

asserted here are significantly intertwined with the bankruptcy estate and main case.  Severing the state law claims from the core bankruptcy matters would serve no purpose.

This Court has no backlog and is prepared to efficiently progress this case through discovery and dispositive motions in the coming months.  Barring unforeseen circumstances, the Court is prepared to begin a trial when discovery is complete and motions resolved.  There is no evidence that the state court's docket is less burdened than the docket of this Court. *See In re Welded Constr., L.P.*, 609 B.R. 101, 117 (Bankr. D. Del. 2019).  Further, the Complaint does not present a right to a jury trial because the Association's claims are equitable in nature. *See* U.S. CONST. amend. VII ("In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved.").  Should any jury issues be present as a result of any counterclaim, the appropriate disposition of such matters can be determined when the case is ready for trial.

Overall, the Court finds the factors weigh against voluntarily abstention.  This adversary proceeding does not present the requisite exceptional circumstances to warrant abstention under 28 U.S.C. § 1334(c)(1), and the Motion must be denied.

## III.  ABSTENTION PURSUANT TO 11 U.S.C. § 305(A)

Section 305(a) provides "[t]he court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if – (1) the interests of creditors and the debtor would be better served by such dismissal or suspension[.]" 11 U.S.C. § 305(a).  "Abstention under Section 305 is a matter within a bankruptcy court's discretion." *In re Remember Enters., Inc.*, 425 B.R. 757, 761 (Bankr. M.D.N.C. 2010).  "A suspension or dismissal under § 305(a) is generally considered to be an extraordinary proceeding, appropriate only in very rare circumstances . . ." *In re Speer*, 522 B.R. 1, 13 (Bankr. D. Conn. 2014).

19

> In determining whether the interests of creditors and the debtor would be better
> served by dismissal, courts have considered factors such as "fairness, priorities in
> distribution, capacity for dealing with frauds and preferences, speed, economy,
> freedom from litigation, the importance of a discharge to the debtor, a pending state
> proceeding, the small number of remaining creditors, the necessary complexity of
> the bankruptcy process, efficiency and economy of administration."

*Remember Enters.*, 425 B.R. at 761 (quoting *In re Golf Course Mktg. Corp.,* C/A No. 95-76646,

slip op. at 4, 1996 WL 33340787 (Bankr. D.S.C. June 16, 1996)).

Although the Motion requests relief under § 305(a), any argument in support thereof was

not presented and any such relief is not appropriate.  The Association's proposed Chapter 11 plan

provides for payment in full to its creditors.  There is no evidence to indicate how the interests of

both the creditors and the debtor would be better served by dismissal or suspension of the Chapter

11 case or adversary proceeding.

## IV. WITHDRAWAL OF CONSENT

The Association objects to the withdrawal of consent to this Court entering a final judgment

in the adversary proceeding and Busbee's withdrawal of consent to this Court conducting a jury

trial.  Courts have recognized that express consent may be withdrawn, under appropriate

circumstances, after a demonstration of good cause. *See In re Kingsley Cap., Inc.*, 423 B.R. 344,

352 (10th Cir. B.A.P. 2010).  At this point in the litigation, the Court sees no prejudice in allowing

the withdrawal of consent.  The Court can address its ability to enter a final order and whether,

where, or how any jury trial will be conducted when the matter is ready for trial.

**IT IS, THEREFORE, ORDERED THAT:**

1. the *Motion for Determination of Core/Non-Core Status and Motion for Abstention*
   *Pursuant to 28 U.S.C. §§ 1334(c)(1) and 1334(c)(2) and 11 U.S.C. § 305(a)(1)* is resolved
   in favor of the Association: this adversary proceeding is a core proceeding and the requests

for this Court to abstain from the above-captioned bankruptcy case and/or adversary proceeding under 28 U.S.C. § 1334(c)(1), (2), and/or 11 U.S.C. § 305(a) are denied;

2. any further relief sought in documents filed by any other Answering Defendants, including the Dodd Defendants, in joining Busbee's Motion is denied;

3. Tona Renee Busbee is allowed to withdraw her consent to this Court entering a final order and conducting a jury trial; and

4. Jackie Calvin Busbee Jr. is allowed to withdraw his consent to this Court entering a final order.

**FILED BY THE COURT**
**05/05/2021**



Chief US Bankruptcy Judge
District of South Carolina

Entered: 05/05/2021